Case No.  
June 5, 2019

Brodsky v. Palmer  
Summons & Complaint

Page 1 of 53

Jay Brodsky  
240 East Shore Road, #444  
Great Neck, NY 11023  
Telephone: (973) 568-1666  
E-mail: demcointerexport@yahoo.com  
Plaintiff ProSe on Behalf of Himself

Case No._____

# UNITED STATE DISTRICT COURT   RECEIVED

## DISTRICT OF NEW JERSEY

JUN 1 0 2019

AT 8:30_____M  
WILLIAM T. WALSH  
CLERK

**THE MATTER OF:**

JAY BRODSKY  
**PLAINTIFF**

-against-

PALMER ADMINISTRATIVE SERVICES, INC.  
DOES 1 THROUGH 5  
**DEFENDANT**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Issues Before the Court:**  
47 U.S.C.A. § 227 et seq.  
15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b)  
15 U.S.C. §§ 6101-6108  
15 U.S.C. § 6105  
15 U.S.C. § 45(a)  
16 C.F.R. Part 310  
Truth in Caller ID Act of 2009  
Anti Spoofing Act 2017  
NYS Senate Bill S434  
NJ-P.L.1960, c.39 (C.56:8-1 et seq.  
NY Gen. Bus. Law § 349  
NY Exec. Law § 63(1)  
Common Law Fraud  
Conspiracy  
(RICO) 18 U.S.C. § 1961 *et seq.*,  
15 U.S.C. §§ 52(a)  
15 U.S.C. § 45(a)(1)

## SUMMONS & COMPLAINT

## I.      INTRODUCTION

1.    On this 5th day of June, 2019, Jay Brodsky, hereafter known as

'PLAINTIFF,' a is a natural 'person' and resident of Nassau County, New

York, duly deposes that the facts as stated herein are true to the best of his

knowledge.

## II.      VENUE AND JURISTICTION:

2.    At all times relevant, Plaintiff is a citizen of the State of New York. Plaintiff

is, and at all times mentioned herein was, a 'person' as defined by 47 U.S.C.

§ 153 (39).

2.    Venue is appropriate under 28 U.S.C.A. § 1332 because, amongst other

things: 'PALMER ADMINISTRATIVE SERVICES, INC.' hereafter known

as 'PALMER,' directs its business activities to residents of New York State

and to others similarly situated nationwide, from its headquarters at,

OCEAN, NEW JERSEY; a 'TEXAS' Corporation, also operating a

commercial website known as, https://www.palmeradministration.com.

3.    The Federal courts' jurisdiction is limited, and Federal courts generally may

only hear a case if it involves a question of Federal law or where diversity of

citizenship exists between the parties and the amount in controversy exceeds

the jurisdictional minimum. See 28 U.S.C. §§ 1331, 1332.  Federal question

jurisdiction exists in all civil actions arising under the Constitution, laws, or

treaties of the United States. 28 U.S.C. § 1331.  A claim 'arises under'

federal law when the federal question is presented on the face of the

plaintiff's well-pleaded complaint. Aetna Health Inc. v. Davila, 542 U.S.

200, 207 (2004). The party asserting jurisdiction carries the burden of

establishing subject matter jurisdiction. Volvo Trucks N. Am., Inc. v.

Crescent Ford Truck Sales, Inc., 666 F.3d 932, 935 (5th Cir. 2012).

4.      The Plaintiff brings this putative action against the Defendants to secure

redress *inter alia*, violations of the, Telephone Consumer Protection Act, 47

U.S.C. § 227 ('TCPA').

5.      In addition, venue is proper in this District under Title 28, United States

Code, Section 1391(b) because Defendants improper conduct alleged in this

complaint were directed to Plaintiff from the State of 'NEW JERSEY,' and/

or originated from the judicial district of 'NEW JERSEY.'

6.      The Plaintiff is one of many phone call recipients who received illegal

telemarketing phone calls from, 'PALMER.'

7.    The Plaintiff brings this action to enforce the consumer privacy provisions

of the 'Telephone Consumer Protection Act,' hereafter known as, 'TCPA,'

and achieve redress and compensation for himself as an individual

consumer.  In a case such as this, where individual damages are set by

statute at $500-$1,500 per violation, the inclusion of punitive damages

are best if not the only means of obtaining redress for the type of wide-scale,

illegal debt collection telemarketing practices at issue, and is consistent with

the private right of action afforded to the Plaintiff.

8.    In this case however, the Defendants routinely used an, 'Automatic

Telephone Dialing System,' hereafter known as, 'ATDS,' that redirected

spurious or 'SPOOFED' caller ID phone numbers to Plaintiff on at least 199

occasions by its agents in consonance to, 47 USC § 227 *et seq.*, TRUTH IN

CALLER ID ACT OF 2009 and/or 'SECTION [1] of P.L.1966, c.39 (C.

56:8-13) and SECTION   [2] of P.L.1999, c.129 (C.56:8-14.3)(New Jersey

Truth in Caller ID Act).

9.    Specifically, Plaintiff brings a claim pursuant to 47 U.S.C. § 227(b), for

unsolicited telemarketing calls made by Defendant, or at Defendant's

direction, to the cellular telephones of Plaintiff and others using an

'autodialer.'

10.   The nature and/or intent of Defendants telemarketing campaign was to

fraudulently sell Plaintiff an 'extended vehicle warranty insurance,' using

deceptive ≥≥≥and misleading sales methods.

11.   DOES' 1 through 5, include officers and directors of, 'PALMER,' who

may be personally liable for the acts alleged in this Complaint pursuant to

47 U.S.C. § 217 of the Telephone Consumer Protection Act, which states;

> 'The act, omission, or failure of any officer, agent, or
> other person acting for or employed by any common
> carrier or user, acting within the scope of his
> employment, shall in every case be also deemed to be the
> act, omission, or failure of such carrier or user as well as
> of that person, 47 U.S.C. § 217' (emphasis added).

Texas v. American Blastfax, Inc., 164 F.Supp.2d 892, 899 (W.D. Tex. 2001)

("American Blastfax"); Sandusky Wellness Center, LLC v. Wagner

Wellness, Inc., 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014);

Maryland v. Universal Elections, 787 F.Supp.2d 408, 415-16 (D.Md. 2011)

("Universal Elections"); Baltimore-Washington Tel Co. v. Hot Leads Co.,

584 F.Supp.2d 736, 745 (D.Md. 2008); Covington & Burling v. Int'l Mktg.

& Research, Inc., 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003);

Chapman v. Wagener Equities, Inc. 2014 WL 540250, at *16-17 (N.D.Ill.

Feb. 11, 2014); Versteeg v. Bennett, Deloney & Noyes, P.C., 775 F.Supp.2d

1316, 1321 (D.Wy.2011) ("Versteeg")

### III.                    THE PARTIES

**PLAINTIFF:**

12.    JAY BRODSKY, 240 East Shore Road, Apt. 444, Great Neck, New York

11023;

**DEFENDANTS:**

13.    'PALMER ADMINISTRATIVE SERVICES, INC,, a 'TEXAS' corporation,

Registered Agent, O. Murray McNeely, 9 Tuscan Villa Circle Lubbock, TX

79423-4928; headquartered at, 3430 Sunset Avenue, Ocean, New Jersey

07712;

14.    At all times material to this complaint, 'PALMER,'conducted its daily

business operations from, OCEAN, NEW JERSEY using the same

equipment and same employees, and held themselves out to the public under

the business name, 'PALMER ADMINISTRATIVE SERVICES, INC.'

15.   DOES' 1 through 5, Plaintiff is presently unable to confirm which of

'PALMERs' wholly owned subsidiaries and/or affiliated companies; DOES'

1 through 5 are liable for the claims asserted herein. Discovery will allow

Plaintiff to proceed with naming additional, 'PALMER,' affiliated and

owned companies. Other persons identities included in DOES' 1 through 5,

whose identities are unknown to Plaintiff participated in the events alleged

herein which give rise to the claims asserted by Plaintiff.

## IV.        JURISDICTION AND VENUE

16.   The Court has Federal question jurisdiction over the TCPA claims. Mims v.

Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

17.   The venue is proper pursuant to 28 U.S.C. § 1331 because a claim "arises

under" federal law when the federal question is presented on the face of the

Plaintiff's well-pleaded complaint.

18.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the

wrongful conduct giving rise to this case occurred in, was directed too

Plaintiff, and/or emanated from this District.

## V.        THE TELEPHONE CONSUMER PROTECTION ACT

19.   Specifically, 47 U.S.C. § 227(b) provides:

Case 3:19-cv-13582-FLW-TJB   Document 1-2   Filed 06/10/19   Page 8 of 59 PageID: 15

Case No.
June 5, 2019

Brodsky v. Palmer
Summons & Complaint

Page 8 of 53

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

20.    In 1991, Congress enacted the, 'TCPA' to regulate the explosive growth of

the telemarketing industry which today is believed to have put forth nearly,

SIXTY BILLION (60,000,000,000) illegal telemarketing calls (according to

the FTC) to consumers over the past few years and that number is expected

to grow exponentially over the next few years if something isn't done to

thwart the efforts of offenders from continuing their illegal telemarketing

practices. In so doing, Congress recognized that, 'unrestricted telemarketing

and debt collection calls. . .can be an intrusive invasion of privacy with

5-10% of those illegal calls resulting in recipients being [1]defrauded out of

Thousands of Dollars each, thereby making these calls costly and dangerous

---

[1] By **TRACEY KAPLAN** | tkaplan@bayareanewsgroup.com | Bay Area News Group
PUBLISHED: July 8, 2018 at 9:00 am | UPDATED: July 10, 2018 at 5:25 am
They boldly prey on the elderly and other vulnerable groups like immigrants and small businesses by impersonating a variety of agencies, from the IRS to student-loan collectors. In the latest shakedown, immigrants in New York City reported being swindled out of millions of dollars by Mandarin-speaking scammers pretending to be from the Chinese consulate and demanding money to protect victims'

to the well being of mostly senior citizens who are more vulnerable to these

types of calls than other segments of the population. The 'Telephone

Consumer Protection Act of 1991,' Pub. L. No. 102-243, 105 Stat. 2394

(1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of

the Communications Act of 1934, 47 U.S.C. § 201 et seq.'

21.   The TCPA's most severe restrictions address telemarketing calls put forth to

residential and cellular telephone lines. In enacting the statute, Congress

stated that banning these calls is 'the only effective means of protecting

telephone consumers from this nuisance and privacy invasion.' Id. § 2(10)

and (12); see also Mims, 132 S. Ct. at 745.

22.   Accordingly, the 'TCPA' prohibits persons and/or companies from initiating

telemarketing calls to residential, business and cellphones using prerecorded

voice messaging or by using an, '[2]Automatic Telephone Dialing System,' or

'[3]Predictive Dialing System,' devises commonly referred to as, 'ATDS,' to

call and/or deliver messages without the prior express consent of the called

---

[2] An **automatic dialer** (**auto dialer, auto-dialer, autodialer**) is an electronic device or software that automatically dials telephone numbers. Once the call has been answered, the autodialer either plays a recorded message or connects the call to a live person.

[3] A **predictive dialer** dials a list of telephone numbers and connects answered dials to people making calls, often referred to as agents. Predictive dialers use statistical algorithms to minimize the time that agents spend waiting between conversations, while minimizing the occurrence of someone answering when no agent is available

party *ACA International v. Federal Communications Commission*, 885 F.3d

687 (D.C. Cir. 2018); *(more recently, September 2018): Marks v. Crunch San*

*Diego, LLC*, No. 14-56834, 2018 WL 4495553 (9th Cir. Sept. 20, 2018)

(Ninth Circuit).

23.   For autodialed telemarketing calls made to cellular telephones and landlines

      prior to October 16, 2013, the telemarketer must show they had a consumers

      '[4]prior expressed written consent,' to call via pre-recorded or autodialed

      messages. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir.

      2009) ("Satterfield")). 'Prior express consent,' is an affirmative defense for

      which the defendant bears the burden of proof. See Grant v. Capital

      Management Services, L.P., 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2,

      2011); see also Robbins v. Coca-Cola Company, No. 13-cv-132, 2013 WL

      2252646, at *2 (S.D. Cal. May 22, 2013).

24.   For autodialed telemarketing and/or debt collection calls made to cellular

      telephones and landlines on or after October 16, 2013, telemarketers must

      show prior expressed written consent (a) bearing the signature of the person

---

[4] **Prior Express Consent:** This term is not specifically defined in the statute or the FCC
regulations. The FCC and most courts have construed the term to mean any provision (written
or oral) of consent to receive calls at a particular phone number. Thus, when a consumer
knowingly provides a phone number to a business, they give that business permission to send
commercial calls or messages to the phone number provided.

who is being dialed, thereby providing consent; (b) written consent must

specify the telephone number to which the person consenting is to be called;

(c) it must show clearly that it authorizes the company to call the person

being dialed by use of an autodialer or prerecorded message for

telemarketing purposes; and (d) providing consent is not a condition of

purchasing goods or services. See In re Rules & Regs.

## VI.   IMPLEMENTING THE TCPA, 27 FCC Rcd 1830, 1844 ¶ 33 (2012)

25.    For calls dialed on or after October 16, 2013, having an established business

relationship exemption is no longer applicable.

26.    On May 9, 2013, the [F]CC released a Declaratory Ruling holding that a,

Corporation, or other entity that contracts out its telephone marketing, 'May

be held vicariously liable under federal common law principles of agency for

violations of . . . section 227(b) . . . that are committed by third-party

telemarketers.'

27.    More specifically, the [F]CC, 2013 Ruling held that, even in the absence of

evidence of a formal contractual relationship between a business and the

telemarketer, it is liable for telemarketing calls if the telemarketer 'has

apparent (if not actual) authority' to make the calls. [F]CC, 2013 Ruling, 28

[F]CC Rcd at 6586 ¶ 34.

28.    The [F]CC has rejected a narrow view of TCPA liability, including the

assertion that a businesses liability requires a finding of formal agency

and immediate direction and control over the third-party who placed the

telemarketing call.

29.    Under the TCPA, a producer of a product or service may vicariously be

liable for a third-party telemarketers' violations of, Section 227(b), even if

the telemarketer did not physically dial the illegal call, and even if a business

did not directly control the telemarketer who did.

(a) In re Rules and Regulations Implementing the, 'Telephone Consumer

Protection Act,' Declaratory Ruling on Motion by ACA International for

Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); Birchmeier v.

Caribbean Cruise Line, Inc., 2012 WL 7062748 (Dec. 31, 2012).

30.    [5]A business is liable under, Section 227(b) when it has authorized a

telemarketer to market its goods, services or attempt to collect a debt.

---

[5] In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the
TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd 6574, 6574 ¶ 1 (2013) ("FCC 2013 Ruling").

Case 3:19-cv-13582-FLW-TJB  Document 1-2  Filed 06/10/19  Page 13 of 59 PageID: 20

Case No.                           Brodsky v. Palmer                    Page 13 of 53
June 5, 2019                     Summons & Complaint

31.    Additionally, a business may be vicariously be liable for a Section 227(b)

       violation under principles of apparent authority and ratification.

32.    The [F]CC 2013 Ruling further clarifies the circumstances under which a

       telemarketer has apparent authority:

           Apparent authority may be supported by evidence that
           the business allows the outside sales entity access to
           information and systems that normally would be within
           the businesses exclusive control, including: access to
           detailed information regarding the nature and pricing of
           the seller's products and services or to the seller's
           customer information. The ability by the outside sales
           entity to enter consumer information into the businesses
           sales or accounting systems, as well as the authority to
           use the businesses trade name, trademark and service
           mark may also be relevant. It may also be persuasive that
           the business approved, wrote or reviewed the outside
           entities telemarketing scripts. Finally, a business would
           be responsible under the 'TCPA' for the unauthorized
           conduct of a third-party telemarketer entity that is
           otherwise authorized to market on the businesses and/or
           owners behalf if the business entity knew (or reasonably
           should have known) that the telemarketer was violating
           the TCPA on the business entities behalf and the business
           failed to take effective steps within its power to force the
           telemarketer to cease and desist from engaging in that
           conduct.

33.    The [F]CC, 2013 Ruling, further held that, even in the absence of evidence

       of a formal contractual relationship between seller and telemarketer, it

       thereby encumbers a seller as liable if the telemarketer, 'Has apparent (if

       not actual) authority' to effectuate the calls.

## VII.        FACTS & STANDING
### The Illegal Telemarketing Campaign at Issue

34.    Plaintiff has standing to bring this suit on his own behalf under Article III

       of the United States Constitution because Plaintiffs' claims state: (a) a valid

       injury in fact; (b) an injury which is traceable to the conduct of Defendants;

       and (c) is likely to be redressed by a favorable judicial decision. See Spokeo

       v. Robins, 578 U.S. __ (2016) at 6; Robins v. Spokeo, 867 F.3d 1108 (9th

       Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); Lujan v.

       Defenders of Wildlife, 504 U.S. 555, 560 (1992); and Chen v. Allstate Inc.

       Co., 819 F.3d 1136 (9th Cir. 2016)

35.    An, 'extended vehicle warranty,' sometimes called a 'service agreement,

       service contract, or a maintenance agreement,' is a prolonged warranty

       offered to consumers to replace the standard warranty once it is terminated.

36.   'PALMER' offers a variety of vehicle protection insurance plans. In business

      for over 20 years they offer a myriad of customizable plans to meet customer

      and agent needs.

37.   The trademarks and trade-names belonging to, 'PALMER,' are widely

      recognized due to an extravagant internet and telemarketing advertising

      campaign.

      **PALMERs CONTACT WITH PLAINTIFF**

38.   The Defendants contacted the Plaintiff by telephone at least 199 times over

      the past three years in an attempt to solicit the purchase of an 'extended

      vehicle warranty,' related to a 2013 Mercedes Benz he never owned.

39.   During those solicitations, Defendants were duly advised by Plaintiff that he

      does not own, lease or enjoy possession of the vehicle described during the

      inquiries.

40.   Over a three year period of time, specifically from 2016-2018, 'PALMER'

      had been specifically advised to, 'CEASE and DESIST' from any further

      promulgation of unsolicited telemarketing phone calls directed to Plaintiff.

41.   However, those repeated demands for privacy all fell on deaf ears.  During

      those unsolicited telemarketing phone calls, Plaintiff also demanded that

'PALMER' remove telephone numbers belonging Plaintiff, (973) 568-1666

and (973) 568-3424, from their telephone telemarketing database. Upon

effectuating those requests, the 'PALMER' telemarketing agents

systematically terminated the calls thereby preventing Plaintiff from any

further contact. Returning or dialing 'PALMERs' telemarketing calls were

rendered impossible because the caller ID and/or the origin of the phone

calls had been, 'SPOOFED' and thereby associated with non-working

telephone numbers in consonance to Federal and New Jersey State law. On

several occasions the 'PALMER' telemarketing agents engaged in salacious

or malfeasant discourse often resulting in a tense standoff between the

parties.

42.    'SPOOFED' phone numbers related to 'PALMERs' telemarketing calls are:

09/22/2018 - 05:01P - (862) 227-8513
09/07/2018 - 03:53P - (973) 833-9027
09/09/2018 - 01:50P - (862) 204-8165
09/14/2018 - 06:13P - (973) 568-4587
10/21/2018 - 12:26P - (551) 900-8091
10/31/2018 - 06:59P - (732) 201-9032
10/17/2018 - 03:29P - (973) 568-2176
10/19/2018 - 01:39P - (973) 568-1274
10/19/2018 - 04:05P - (609) 248-9851
10/23/2018 - 01:49P - (862) 285-4067
10/24/2018 - 03:27P - (973) 762-0808
10/24/2018 - 04:15P - (973) 307-9287
10/26/2018 - 02:21P - (973) 568-9546
10/26/2018 - 03:28P - (973) 568-7777
10/30/2018 - 06:05P - (973) 568-2118
10/03/2018 - 05:20P - (201) 304-9631
10/05/2018 - 04:22P - (973) 640-5250
10/05/2018 - 08:45P - (973) 568-1811
10/10/2018 - 02:16P - (973) 568-5048

10/11/2018 - 07:36P - (609) 248-9809
10/16/2018 - 06:37P - (973) 385-1553
11/30/2018 - 05:02P - (201) 354-1618
11/17/2018 - 03:35P - (973) 568-1446
11/22/2018 - 06:51P - (973) 875-1438
11/27/2018 - 02:21P - (973) 568-2143
11/30/2018 - 03:14P - (973) 975-0856
11/16/2018 - 12:04P - (973) 568-4909
11/10/2018 - 03:31P - (201) 220-5664
11/02/2018 - 02:09P - (973) 302-6395
11/12/2018 - 06:01P - (973) 996-3172
11/13/2018 - 01:25P - (973) 233-4964
11/13/2018 - 02:42P - (973) 457-4425
11/13/2018 - 07:53P - (973) 339-7320
11/14/2018 - 03:31P - (973) 339-7320
12/27/2018 - 03:24P - (732) 822-2973
12/11/2018 - 01:30P - (973) 568-5121
12/12/2018 - 03:24P - (973) 568-1094

01/21/2016 - 03:43P - (973) 755-6883
01/21/2016 - 06:38P - (201) 380-0014
01/14/2016 - 01:02P - (201) 220-5664
05/02/2016 - 02:57P - (973) 607-2629
05/03/2016 - 03:05P - (973) 343-0599
04/21/2016 - 02:00P - (973) 568-6942
04/29/2016 - 04:31P - (973) 833-4807
04/29/2016 - 03:09P - (973) 755-6863
04/22/2016 - 05:24P - (201) 885-4312
04/25/2016 - 02:13P - (201) 249-5413
04/14/2016 - 03:54P - (201) 885-4283
04/11/2016 - 01:19P - (908) 568-1668
04/14/2016 - 03:54P - (201) 885-4283
04/11/2016 - 01:19P - (908) 568-1668
04/13/2016 - 12:52P - (973) 342-3890
04/05/2016 - 04:55P - (201) 885-4283
03/26/2019 - 06:01P - (973) 718-3284
08/03/2016 - 01:30P - (973) 755-6973
08/10/2016 - 02:42P - (973) 755-6903
08/18/2016 - 05:09P - (973) 755-6908
08/29/2016 - 05:52P - (201) 885-4312
07/27/2016 - 03:14P - (973) 564-6333
07/28/2016 - 06:21P - (862) 534-6878
11/19/2016 - 01:16P - (609) 623-0118
07/01/2016 - 04:53P - (973) 912-0080
06/05/2016 - 01:42P - (862) 202-7193
02/17/2017 - 02:24P - (973) 435-0344
04/10/2017 - 07:56P - (973) 209-0900

04/13/2017 - 01:00P - (973) 287-7927
04/17/2017 - 01:08P - (973) 568-2013
04/20/2017 - 05:21P - (973) 718-4536
04/26/2017 - 01:33P - (973) 755-6476
04/25/2017 - 05:30P - (973) 855-4989
04/26/2017 - 03:47P - (973) 755-6233
04/27/2017 - 04:51P - (973) 958-5673
05/09/2017 - 04:03P - (973) 459-4611
05/02/2017 - 05:46P - (856) 373-4211
05/25/2017 - 03:37P - (973) 313-8005
06/01/2017 - 04:00P - (973) 370-8017
06/15/2017 - 04:27P - (973) 310-6843
06/16/2017 - 01:21P - (973) 310-6840
07/05/2017 - 01:47P - (973) 310-7059
07/21/2017 - 02:59P - (973) 604-5460
07/26/2017 - 06:11P - (973) 310-7843
08/14/2017 - 05:18P - (973) 604-5443
08/29/2017 - 01:47P - (973) 363-0114
09/02/2017 - 05:38P - (908) 864-3633
09/07/2017 - 03:53P - (973) 833-9027
09/12/2017 - 02:11P - (973) 568-6069
09/14/2017 - 06:13P - (973) 568-4587
09/22/2017 - 02:06P - (973) 604-5460
09/22/2017 - 04:23P - (973) 604-5460
09/22/2017 - 05:01P - (862) 227-8513
10/03/2017 - 05:20P - (201) 304-9631
10/05/2017 - 04:22P - (973) 640-5250
10/05/2017 - 08:45P - (973) 568-1811

10/10/2017 - 02:16P - (973) 568-5048
10/11/2017 - 03:29P - (609) 248-9809
10/17/2017 - 03:29P - (973) 568-2176
10/19/2017 - 01:34P - (973) 568-1274
10/19/2017 - 04:05P - (609) 248-9851
10/23/2017 - 01:49P - (862) 285-4067
10/24/2017 - 03:27P - (973) 762-0808
10/24/2017 - 04:15P - (973) 307-9287
10/26/2017 - 02:21P - (973) 568-9546
10/30/2017 - 05:24P - (973) 568-2118
12/11/2017 - 01:30P - (973) 568-5121
12/12/2017 - 03:24P - (973) 568-1094
12/21/2017 - 09:33P - (908) 487-4296
12/27/2017 - 03:24P - (732) 822-2973
12/30/2017 - 11:07A - (973) 568-5855
12/21/2017 - 04:48P - (973) 568-4128
01/08/2018 - 02:37P - (973) 568-6661
01/08/2018 - 03:49P - (973) 568-6406
01/18/2018 - 02:53P - (973) 568-7131
01/24/2018 - 02:26P - (551) 900-8165
01/29/2018 - 06:43P - (973) 568-7349
01/29/2018 - 01:39P - (908) 285-2166
01/30/2018 - 01:53P - (973) 564-6841
01/30/2018 - 04:31P - (973) 382-2468
02/01/2018 - 12:59P - (908) 285-2166
02/06/2018 - 05:41P - (973) 528-8390
02/06/2018 - 05:49P - (973) 307-9484
02/12/2018 - 06:49P - (973) 284-8693
02/14/2018 - 04:23P - (973) 369-9114
02/14/2018 - 05:40P - (973) 307-9123
02/14/2018 - 05:45P - (973) 369-9114
02/15/2018 - 03:24P - (973) 568-6725
02/16/2018 - 12:59P - (973) 568-4483
02/16/2018 - 01:10P - (973) 568-7997
02/19/2018 - 04:08P - (908) 736-8985
02/19/2018 - 06:11P - (973) 568-2614
03/01/2018 - 06:44P - (973) 307-9421
02/21/2018 - 03:09P - (973) 568-3426
02/22/2018 - 12:54P - (732) 210-0547
02/06/2018 - 05:41P - (973) 528-8390
02/08/2018 - 05:49P - (973) 307-9484
03/03/2018 - 07:29P - (201) 490-4285
03/09/2018 - 06:43P - (201) 365-2002
03/13/2018 - 04:51P - (973) 936-5710
03/16/2018 - 04:30P - (973) 737-9061
03/28/2018 - 03:02P - (732) 738-5134
03/29/2018 - 02:27P - (973) 569-2605
03/29/2018 - 04:55P - (732) 738-6038
05/07/2018 - 03:59P - (973) 643-7000
04/06/2018 - 02:02P - (973) 568-6661
04/12/2018 - 03:48P - (201) 215-2656
04/13/2018 - 02:03P - (973) 315-7672
04/17/2018 - 01:44P - (201) 218-6199

04/17/2018 - 01:44P - (201) 218-6199
04/19/2018 - 04:04P - (973) 310-6628
05/01/2018 - 01:14P - (201) 713-0985
04/18/2018 - 04:07P - (973) 675-4279
05/08/2018 - 10:53A - (201) 713-0983
05/09/2018 - 02:38P - (201) 713-0983
05/09/2018 - 04:19P - (973) 277-9132
05/11/2018 - 05:54P - (973) 355-7190
05/17/2018 - 11:01P - (973) 737-9058
05/23/2018 - 06:29P - (973) 307-9473
05/24/2018 - 02:51P - (973) 568-1678
05/14/2018 - 02:18P - (973) 653-2868
05/15/2018 - 03:23P - (973) 640-1615
05/30/2018 - 05:40P - (973) 580-1315
05/31/2018 - 01:46P - (973) 580-1315
05/31/2018 - 02:48P - (973) 564-6909
06/05/2018 - 04:35P - (973) 307-9476
06/05/2018 - 05:02P - (973) 569-1543
06/06/2018 - 05:30P - (973) 573-0898
06/11/2018 - 03:50P - (973) 577-1757
06/13/2018 - 04:11P - (973) 573-8968
07/18/2018 - 04:11P - (973) 402-9308
07/10/2018 - 02:20P - (973) 307-9628
07/03/2018 - 02:41P - (973) 912-0080
07/11/2018 - 03:54P - (973) 569-2279
07/11/2018 - 06:02P - (973) 569-2279
07/20/2018 - 01:56P - (973) 569-1595
07/30/2018 - 03:03P - (973) 568-4702
07/30/2018 - 06:01P - (973) 568-4702
08/01/2018 - 01:50P - (973) 575-9293
08/15/2018 - 02:47P - (856) 221-2450
08/17/2018 - 12:54P - (609) 452-5057
08/17/2018 - 06:46P - (973) 240-8732
08/18/2018 - 04:40P - (973) 240-2473
08/20/2018 - 01:24P - (973) 240-8732
08/21/2018 - 04:11P - (973) 967-8650
08/21/2018 - 03:52P - (973) 568-6828
08/23/2018 - 02:34P - (973) 277-9132
08/13/2018 - 06:05P - (973) 572-7878
09/14/2018 - 02:39P - (973) 570-4880
09/17/2018 - 03:44P - (973) 599-4635
09/19/2018 - 07:14P - (973) 574-1882
10/01/2018 - 02:32P - (973) 580-5646
10/01/2018 - 01:55P - (973) 206-4268
09/18/2018 - 04:18P - (973) 240-8766
09/18/2018 - 04:04P - (973) 206-4268
09/18/2018 - 06:13P - (973) 240-8766
09/20/2018 - 03:56P - (973) 206-4268
09/20/2018 - 06:09P - (973) 793-8134
09/21/2018 - 01:17P - (973) 397-4068
09/21/2018 - 07:34P - (973) 875-6421
09/22/2018 - 02:06P - (973) 604-5460
09/22/2018 - 04:23P - (973) 604-5460

43.   On February 15, 2018, at 2:24PM, 'PALMER' contacted Plaintiff

(973) 369-9114 despite being repeatedly advised to, 'CEASE and DESIST'

from any further promulgation of phone solicitations to purchase, 'extended

vehicle warranty insurance' for a, '2013 Mercedes Benz,' that Plaintiff never

owned.  'EVAN MICHAELs,' hereafter known as, 'MICHAELS,' a

telemarketer employed by 'PALMER,' was duly confronted.  After again

demanding that, 'PALMER,' 'CEASE and DESIST,' Plaintiff abruptly

terminated the phone call.  At 3:24PM, 'MICHAELS' called again (973)

568-6725, despite Plaintiffs' demand too, 'CEASE and DESIST.'  On all

prior occasions when 'PALMER' called Plaintiff, a predictive or 'automated

telephone dialing system' (ATDS) was engendered.  On all occasions when

Plaintiff received phone solicitations from 'PALMER,' a 'SPOOFED' caller

ID was engendered in consonance to the, 'TRUTH IN CALLER ID ACT

2009,' and since the calls originated from the State of New Jersey they

violated, 'New Jersey-P.L.1960, c.39 (C.56:8-1 et seq.)'  As Plaintiff resided

in the State of New York, the calls were in violation of, NYS Senate Bill

S434 which states:

Section 1.  The general business law is amended by adding a
new section 399-ppp to read as follows:

'S 399-PPP. PROHIBITION ON PROVISION OF DECEPTIVE
CALLER IDENTIFICATION INFORMATION. 1. IT  SHALL  BE
UNLAWFUL  FOR  ANY  BUSINESS  ENTITY,  IN CONNECTION
WITH ANY TELECOMMUNICATIONS SERVICE OR VOIP SERVICE,
TO CAUSE ANY  CALLER  IDENTIFICATION SERVICE TO
TRANSMIT FALSE CALLER IDENTIFICATION INFORMATION,
WITH THE INTENT TO DEFRAUD OR HARASS, WHEN  MAKING
A CALL TO ANY PERSON WITHIN THE STATE.'

44.     On all calls received by Plaintiff from 'PALMER,' there was a substantial

pause (dead air) of at least seven-seconds prior to a human voice joining the

conversation.  Although difficult to describe, on each occasion prior to a

human voice joining the conversation there was an audible, 'swoosh' or

'clicking' noise, or a combination of both, identical to that of a phone

being lifted from a receiver or cradle.

45.     Plaintiff answered the phone with a courteous, 'Hello' which he repeated

approximately four times until the party calling finally joined the

conversation.  When the human voice finally responded, it was,

'MICHAELS,' who again identified himself as calling on behalf of

'PALMER.'  'MICHAELS' addressed Plaintiff by name thereby affirming

'PALMER' had somehow gained access to Plaintiffs' personal information.

A conversation then ensued as follows:

"Who did you say you were?"...........................

Evan Micheals replied,

"I'm with the Palmer Warranty Administration and I'm
calling about your 2013 Mercedes Benz."..............

Plaintiff was fully aware that he did not own a 2013
Mercedes Benz but further engaged 'MICHAELs' to
aggregate additional information to disclose his motive
for calling,

"What is Palmer Warranty exactly?"...........

Evan Micheals boldly replied,

"Palmer Warranty is part of Palmer Mercedes Benz of
Atlantic City in Ocean County."..........

Plaintiff then sternly demanded,

"I have been asking your company to remove my name
from its calling list for a long time. If you do not remove
my name immediately I will file a Federal lawsuit against
you and your company.".........

Evan Micheals replied with abundant laughter to qualify
his next statement ,

"It makes no difference what you do.  If you want to file
a lawsuit, go ahead."…………

Evan Micheals continued to laugh until Plaintiff terminated the
phone call.

46.  The unauthorized robocall placed by 'PALMER' invaded Plaintiffs privacy

and thereby interfered with the use of his cellular telephone.

47.  The 'PALMER' Defendants should have been aware that using an ATDS to

market their extended vehicle warranty insurance violated the TCPA.

48.  The 'PALMER' Defendants should have know that displaying a 'SPOOFED'

caller ID is illegal and violates the, TRUTH IN CALLER ID ACT 2009,

NEW JERSEY-P.L.1960, c.39 (C.56:8-1 et seq.)' and NYS Senate Bill S434.

49.  Plaintiff never contacted any of the 'PALMER' Defendants for any purpose,

and had no business relationship with them or anyone associated with them.

50.  Plaintiff was aware the reason for the unsolicited telemarketing calls was to

market 'PALMERs' insurance to him.

51.  Plaintiff at no time granted consent to the 'PALMER' Defendants to contact

him thereby intruding on his privacy and causing annoyance and an

unnecessary expenditure of his time to those calls.

52.  On February 15, 2018 at 5:05PM, Plaintiff suspecting foul play contacted,

Mercedes Benz of Atlantic City, New Jersey (MBAC) to confirm

'PALMERs' claims at (609) 645-9000.

53.  Plaintiff asked for the general manager of 'MBAC' to inquire about whether

or not 'PALMER' had any association with 'MBAC.' The answer was a

very resounding, 'NO.' The manager asked for and was supplied with

'PALMERs' contact information to demand that they, 'CEASE and DESIST'

from engendering their good name.

54.  Plaintiff is the exclusive owner and user of the telephone numbers assigned

to him ending in 1666 and 3424 and is the account holder of record for those

accounts.

55.  'PALMER' knowingly effectuated the use of fictitious caller IDs'

commonly known as 'SPOOFING' that either mimic some or all of the

numbers displayed as the caller ID or the area code of the person being

called. This is done to lull prospective buyers into a false sense of security

that the caller is located nearby and therefore must be a neighbor which is in

violation of FTC Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R.

Part 310.

56.     'PALMER' routinely purchases the names and private information from

third party vendors in order to tailor its telemarketing scheme to the

products they are attempting to sell. In this particular case it was extended

automobile warranty insurance.

57.     At all times relevant to this lawsuit,'PALMER' had the ability to supervise,

monitor, and control the conduct of its telemarketers, but consciously turned

a 'blind eye' to its illegal conduct, while simultaneously accepting benefits

of 'PALMERs' combined illegal acts.

58.     At all times relevant to this lawsuit, 'PALMER' had the authority to issue a

'CEASE and DESIST' order to its telemarketers, employees', agents,

representatives and subsidiaries thereby revoking their authority to illegally

market products using 'PALMERs' widely recognized name.

59.     At all times relevant to this lawsuit, 'PALMERs' owners, directors and

managers had the authority to issue a 'CEASE and DESIST' order to its

telemarketers thereby revoking the authority to telemarket on 'PALMERs'

behalf.

60.    At no time did any of the 'PALMER' Defendants issue such a 'CEASE and

DESIST' order to its telemarketers, agents, employees' and/or subsidiaries.

61.    At all times relevant to this lawsuit, the 'PALMER' Defendants allowed its

telemarketers, agents, employees and subsidiaries to telemarket using its

trade names and to post its trademarks on telemarketers websites.

62.    By allowing 'PALMERs,' telemarketers and its associated subsidiaries to

telemarket using its trade name, and by allowing 'PALMER' to use its

trademarks, the 'PALMER' Defendants intentionally led Plaintiff to believe

that its telemarketers had the authority to act on 'PALMERs' behalf.

63.    'PALMER' and its' subsidiaries, provided its agents advertising on its

website which affirmed to skeptical consumers, that, 'PALMER' and its

telemarketers were *de facto*, 'Partners.'

## VIII.        INJURY IN FACT

64.    Plaintiffs' injuries are both 'concrete' and 'particularized' thereby satisfying

the requirements of Article III of the Constitution. (Id.)

65.   For an injury to be concrete it must cause material injury, meaning it actually

exists. In this case, the Plaintiff took the affirmative step of enrolling on the

National Do-Not-Call Registry for the purpose of preventing telemarketing

calls to his telephone. Such telemarketing calls are a nuisance, an invasion of

privacy, and an expense to Plaintiffs. See Soppet v. enhanced Recovery Co.,

LLC, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are

present in this case. (See also Chen v. Allstate Inc. Co., 819 F.3d 1136 (9th

Cir. 2016).)

66.   Furthermore, the Third Circuit recently stated, Congress found that

'[u]nsolicited telemarketing phone calls or text messages, by their nature,

invade the privacy and disturb the solitude of their recipients,' Van Patten,

847 F.3d at 1043, and sought to protect the same interests implicated in the

traditional common law cause of action. Put differently, Congress was not

inventing a new theory of injury when it enacted the TCPA. Rather, it

elevated a harm that, while 'previously inadequate in law,' was of the same

character that previously existed 'legally cognizable injuries.'Spekeo 136

S.Ct. at 1549. Spokeo addressed, and approved, such a choice by Congress.

Susinno v. Work Out World Inc., No. 16-3277, 2017 WL 2925432, at \*4 (3d

Cir. July 10, 2017).

67.     For an injury to be of particularized means, the injury must affect Plaintiff

in a personal and individual manner (*See Spokeo*).  Furthermore, Plaintiff

is a person who pays for his phone, and is the regular carrier and user of the

phone. All of these injuries are particular to Plaintiff.

## IX. <u>THE MASSIVE SCOPE OF ILLEGAL TELEMARKETING AT ISSUE</u>

68.     The scope of the illegal telemarketing practices at issue in this case are

confirmed by records contained with the Federal Trade Commission's

<u>Do Not Call</u> Registry Database and by past class action litigations and/or

complaints addressing these same issues.

69.     47 U.S.C. § 227(c) states that, 'Any person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity

in violation of the regulations proscribed under this subsection may bring a

private action based on a violation of said regulations,' which were enacted

to protect telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object.

70.    The TCPAs' implementing regulation—47 C.F.R. § 64.1200(c)—provides

       that, '[n]o person or entity shall initiate any telephone solicitation to a

       residential or business telephone subscriber who has registered his or her

       telephone number on the National do-not-call registry of persons who do not

       wish to receive telephone solicitations that is maintained by the Federal

       government.' See 47 C.F.R. § 64.1200(c).

71.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) 'are

       applicable to any person or entity making telephone solicitations or

       telemarketing calls to wireless telephone numbers to the extent described in

       the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153,'

       Rules and Regulations Implementing the Telephone Consumer Protection

       Act of 1991,' which the Report and Order, in turn, provides as follows:

       The Commission's rules provide that companies making telephone

       solicitations to residential, business or cellphone subscribers must comply

       with time of day restrictions and must institute procedures for maintaining

       do-not-call lists.  For reasons described above, we conclude that these rules

       apply to calls made to wireless telephone numbers. We believe that wireless

       subscribers must be afforded the same protections as wireline subscribers.

72.   Plaintiff at <u>NO</u> time gave 'PALMER,' 'Prior Express Consent,' too autodial

and/or deliver 'SPOOFED' telemarketing calls to purchase an extended

vehicle warranty insurance or any other products sold by 'PALMER.'

73.   In June of 2016, the United States District Court for the Northern District of

West Virginia under the "TCPA" denied a motion to dismiss filed by "Got

Warranty Inc." as well as co-defendants NCWC and 'PALMER.' The

Defendants filed a motion to dismiss the 'TCPA' class action on the ground

that the plaintiffs' did not suffer concrete harm by receiving telephone calls

from the Defendants who engendered use of an, 'Automatic Telephone

Dialing System' (ATDS) to contact plaintiffs cellular telephones. The court

relied on *Spokeo v. Robbins* and found to the contrary, expressly holding

that, 'unwanted phone calls cause concrete harm.' The court also found

'intangible harm' caused by telephone calls that violate 'TCPA,' such as

'invasion of privacy,' wasting a consumers time or causing risk of injury due

to interruption of concentration while driving. In addition the drainage of a

cellphone battery and the cost for electricity to charge the battery is concrete

material harm. Therefore, a claim of this magnitude deserves to be heard in

court.

74.    A formal request to the Federal Trade Commission has been proffered by the

       Plaintiff for telephone records and complaint records pertaining to present

       and past inquiries by consumers against, 'PALMER,' for the violation of

       'TCPA'.

## X.    THE TRUTH IN CALLER ID ACT OF 2009,
111 P.L. 331, 124 Stat. 3572
Prohibition on Provision of Inaccurate Caller Identification Information

75.     (a) In general-- It shall be unlawful for any person within the United

       States, in connection with any telecommunications service or IP-enabled

       voice service, to cause any caller identification service to knowingly transmit

       misleading or inaccurate caller identification information with the intent to

       defraud, cause harm, or wrongfully obtain anything of value, unless such

       transmission is exempted pursuant to paragraph (3)(B).

       (b)  In general.--Any person that is determined by the Commission, in

       accordance with paragraphs (3) and (4) of section 503(b), to have violated

       this subsection shall be liable to the United States for a forfeiture penalty. A

       forfeiture penalty under this paragraph shall be in addition to any other

       penalty provided for by this Act. The amount of the forfeiture penalty

       determined under this paragraph **shall not exceed $10,000 for each**

violation, or 3 times that amount for each day of a continuing violation,

except that the amount assessed for any continuing violation shall not

exceed a total of $1,000,000 for any single act or failure to act.

## XI.  NEW YORK STATE SENATE BILL S434

76. Section one amends the general business law by adding a new section

399-ppp. Subdivision I of section 399-ppp provides that it shall be unlawful

for any business entity, in connection with any telecommunications service

or VoIP service, to cause any caller identification service to transmit false

caller identification information when making a call to any person within the

state with the intent to defraud or harass.

### NEW JERSEY P.L.1960, c.39 (C.56:8-1 et seq.)

77. This bill, entitled the "Truth in Caller Identification Act," supplements the

consumer fraud act, P.L.1960, c.39 (C.56:8-1 et seq.), to make it an unlawful

practice for any person, in connection with any telecommunications service

used within this State, to knowingly cause any telephone caller identification

("caller ID") service to transmit misleading or inaccurate caller ID

information with the intent to defraud, cause harm, or wrongfully obtain

anything of value

**LEGAL DEFINITION OF 'SPOOFING'**

78.    'Caller ID spoofing is the practice of causing the telephone network to

indicate to the receiver of a call that the originator of the call is a station

other than the true originating station. (wikipedia)'

**SPOOFED PHONE CALLS RECEIVED BY PLAINTIFF**

79.    'PLAINTIFF' is filing a petition with the Attorney General of the State of

New Jersey to enforce P.L.1960, c.39 (C.56:8-1 et seq.).

80.    'PLAINTIFF' is filing a petition with the Attorney General of the State of

New York to enjoin 'PALMER' from engaging in further acts of caller ID

telephone 'SPOOFING' under NEW YORK STATE SENATE BILL S434 and to

impose penalties for no less than the maximum amount proscribed by law of 'TEN

THOUSAND DOLLARS' ($10,000) per 'SPOOFED' phone call dialed against

'PLAINTIFF.'

## XII.    SENATE, No. 743 STATE OF NEW JERSEY, 216th LEGISLATURE

81.    AN ACT prohibiting the manipulation of certain telephone caller

identification information and supplementing P.L.1960, c.39 (C.56:8-1 et

seq.).

82.    "Caller identification information" or "caller ID information" means

information provided by a caller identification service regarding the

telephone number of, or other **information regarding the origination of, a**

**call made using a telecommunications service.**

83. A violation of this act shall be an unlawful practice subject to the penalties

applicable pursuant to section 1 of P.L.1966, c.39 (C.56:8-13) and section 2

of P.L.1999, c.129 (C.56:8-14.3).

84. This bill, entitled the "Truth in Caller Identification Act," supplements the

consumer fraud act, P.L.1960, c.39 (C.56:8-1 et seq.), to make it an unlawful

practice for any person, in connection with any telecommunications service

used within this State, to knowingly cause any telephone caller identification

("caller ID") service to transmit misleading or inaccurate caller ID

information with the intent to defraud, cause harm, or wrongfully obtain

anything of value, except for the following: 1) any authorized activity of a

law enforcement agency; or 2) a court order that specifically authorizes the

use of caller ID manipulation.

85. An unlawful practice under the consumer fraud act is **punishable by a**

**monetary penalty of not more than $10,000 for a first offense and not**

**more than $20,000 for any subsequent offense.** In addition, violations can

result in cease and desist orders issued by the Attorney General, the

assessment of punitive damages and the awarding of treble damages and

costs to the injured party.

### XIII.        THE LEGAL BASIS OF THE CLAIMS

86.   The Plaintiff's claim arise pursuant to the provisions of the TCPA, a

Federal Statute enacted to prohibit unreasonable invasions of privacy via

certain telemarketing practices.

87.   There are questions of law and fact common to Plaintiff, including but not

limited to the following:

>     (a.)   Whether 'PALMER' violated the TCPA by
>            engaging in the act of effectuating unsolicited
>            prerecorded and/or autodialed telemarketing calls
>            to residential, business or cellphone lines?
>
>     (b.)   Whether 'PALMER' and its' associates illegally
>            attempted to solicit Plaintiff?
>
>     (c.)   Whether unsolicited 'ATDS' telemarketing phone
>            calls had been effectuated by agents, employees',
>            telemarketers, subsidiaries or other associated
>            business entities on behalf of, 'PALMER?'

(d.)    Whether Plaintiff is entitled to statutory, injunctive

and punitive damages as a result of 'PALMERs'

illegal actions?

(e.)    Whether an agency relationship existed between,

owners, directors and/or managers of 'PALMER'

and if they had the ability to control the illegal

telemarketing practices associated with 'PALMER'

telemarketers, agents and/or subsidiaries?

(g.)    Whether, 'MICHAEL SCHAFTEL,' (CEO)

provided 'PALMERs' telemarketers, agents,

employees', subsidiaries or other associated

business entities apparent authority to telemarket

on 'PALMERs' behalf?

and

(h.)    Whether 'MICHAEL SCHAFTEL,' ratified

'PALMERs,' illegal acts?

## XIV.      COUNT ONE
## VIOLATION OF THE TCPA: 47 U.S.C. § 227(b)

88.    Plaintiff re-alleges and incorporates the foregoing allegations contained

herein, as set forth fully in this Complaint.

89.    The 'TCPA' makes it unlawful to initiate any telephone call, to any

residential or cellphone line, using an 'ATDS,' artificial or prerecorded

voice, SPURIOUS and/or SPOOFED caller ID or to effectuate any debt

collection, telemarketing, message, advertisement or solicitation of any kind

without prior expressed written consent of the called party being dialed.

90.    Plaintiff alleges that 'PALMER' engaged in an illegal telemarketing scheme,

thereby violating of the provisions set forth within the 'TCPAs' prohibition

against telemarketing using an 'ATDS' or engendering 'SPOOFED' caller

IDs'. *(see Marks v. Crunch)*

91.    Plaintiff alleges that such violations of the 'TCPA' were both willful and

negligent.

92.    As a result of 'PALMERs' illegal actions, Plaintiff is entitled to sustain

his rights, status, and legal relations relating to 'PALMERs' use of illegal

telemarketing practices using an 'ATDS' and/or 'SPOOFED' caller IDs'

pursuant to the 'TCPA' through these actions.

## XV.                    <u>COUNT TWO</u>
### <u>INJUNCTIVE RELIEF TO BAR FUTURE TCPA VIOLATIONS</u>

93.  Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein, as set forth in this Complaint.

94.  The 'TCPA' expressly authorizes the Court to issue injunctive relief against

'PALMER' to prevent further violations of the 'TCPA' from being inflicted

against Plaintiff.

95.  The 'TRUTH IN CALLER ID ACT OF 2009' expressly authorizes the Court

to issue injunctive relief against 'PALMER' to prevent further violations of

the 'TRUTH IN CALLER ID ACT OF 2009' from being effectuated

against Plaintiff.

96.  The 'NEW YORK TRUTH IN CALLER ID ACT,' (S434) expressly

authorizes the Court to issue injunctive relief against 'PALMER' to prevent

further violations of the 'NEW YORK TRUTH IN CALLER ID

ACT' (S434) from being effectuated against Plaintiff and others similarly

situated.

97.  The 'NEW JERSEY TRUTH IN CALLER ID ACT,' expressly authorizes

the Court to issue injunctive relief against 'PALMER' to prevent further

violations pursuant to section 1 of P.L.1966, c.39 (C.56:8-13) and section 2

of P.L.1999, c.129 (C.56:8-14.3), from being effectuated against Plaintiff.

98.     Plaintiff, respectfully petitions the Court to order 'PALMER,' including but

        not limited to its employees, agents, telemarketers or other affiliates of,

        'PALMER,' to immediately 'CEASE & DESIST,' from engaging in any

        further illegal telemarketing calls directed to Plaintiff and others similarly

        situated to prevent further violations of the, 'TCPA.'

## XVI.          COUNT THREE
## VIOLATION OF NEW JERSEY _P.L.1960, c.39 (C.56:8-1 et seq.)

99.     Plaintiff re-alleges and incorporates the foregoing allegations contained

        herein,  as set forth fully in this Complaint.

100.    NEW JERSEY _P.L.1960, c.39 (C.56:8-1 et seq.) makes it unlawful to

        engender 'SPOOFED' caller IDs from a business, to effectuate any

        telemarketing, message, advertisement or solicitation of any kind with no

        exception.

101.    Plaintiff alleges that, 'PALMER' engaged in an illegal telemarketing

        scheme, thereby violating of the provisions set forth within, NEW JERSEY

        P.L.1960, c.39 (C.56:8-1 et seq.) prohibiting telemarketing using

        'SPOOFED' caller IDs'.

102.  Plaintiff alleges that such violations of NEW JERSEY _P.L.1960, c.39 (C.

56:8-1 et seq.) were both willful and negligent.

103.  As a result of 'PALMERs' illegal actions, Plaintiff is entitled to sustain

his rights, status, and legal relations relating to 'PALMERs' use of illegal

telemarketing practices using 'SPOOFED' caller IDs' pursuant to NEW

JERSEY _P.L.1960, c.39 (C.56:8-1 et seq.) through these actions.

## XVII.        COUNT FOUR
## VIOLATIONS OF NEW YORK SENATE BILL S434

104.  Plaintiff re-alleges and incorporates the foregoing allegations contained

herein,  as set forth fully in this Complaint.

105.  NEW YORK STATE SENATE BILL S434 makes it unlawful to engender

'SPOOFED' caller IDs from a business, to effectuate any telemarketing,

message, advertisement or solicitation of any kind with no exception.

106.  Plaintiff alleges that 'PALMER' engaged in an illegal telemarketing scheme,

thereby violating of the provisions set forth within, NEW YORK STATE

SENATE BILL S434 prohibiting telemarketing using 'SPOOFED' caller

IDs'.

107.   Plaintiff alleges that such violations of NEW YORK STATE SENATE BILL

S434 were both willful and negligent.

108.  As a result of 'PALMERs' illegal actions, Plaintiff is entitled to sustain

his rights, status, and legal relations relating to 'PALMERs' use of illegal

telemarketing practices using 'SPOOFED' caller IDs' pursuant to NEW

YORK STATE SENATE BILL S434 through these actions.

### XVIII.       COUNT FIVE
### VIOLATION OF NY Gen. Bus. Law § 349

109.  Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein.

110.  'PALMER' engaged in deceptive practices in the conduct of business, trade

and/or commerce in New York State, in violation of GBL § 349(a) in the

course of promoting, advertising and marketing its extended vehicle

warranty insurance, as set forth above.

111.  'PALMER' has damaged Plaintiff who is resident in New York through its

deceptive practices in violation of GBL § 349(a).

112.  'PALMER' has wrongfully attempted to obtain pecuniary remuneration and/

or property, directly and/or indirectly, by imparting these deceptive practices

upon Plaintiff who is resident in NewYork.

### XIX.        COUNT SIX
### VIOLATION OF NY Gen. Bus. Law § 350

113.    Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein.

114.    'PALMER' made representations and/or omissions of fact that were

materially misleading by promulgating a spurious relationship with,

Mercedes Benz of Atlantic City, New Jersey, and thereby made false

advertisements and/or statements to induce Plaintiff, in the conduct of

business, trade and/or commerce in New York State, in violation of GBL §

350, in the course of advertising, promoting, and/or marketing extended

vehicle warranty insurance, as set forth above.

115.    'PALMER' has damaged Plaintiff who is resident in New York State through

its false advertisements in violation of GBL § 350.

### XX.        COUNT SEVEN
### REPEATED AND PERSISTENT FRAUD IN VIOLATION OF
### NEW YORK EXECUTIVE LAW § 63(12)

116.    Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein.

117.    'PALMER' engaged in repeated and/or persistent fraud in violation of

New York Executive Law § 63(12) in the course of its promotion, marketing,

and/or advertisement of extended vehicle warranty insurance in New York

State.

118.  'PALMER' engaged in repeated and/or persistent fraud in violation of New

York Executive Law § 63(12) through its: (i) fraudulent scheme to promote

and market extended vehicle warranty insurance as described above; and/or

(ii) false statements and/or omissions to New York State on each of its

applications to engage in insurance sales.

119.  'PALMER' engaged in repeated and/or persistent fraud in violation of New

York Executive Law § 63(12) by promulgating its false statements and/or

omissions to New York State on each of its applications to engage in the

sale of extended vehicle warranty insurance.

120.  'PALMER,' damaged Plaintiff who is resident in New York State in order to

aggrandize its profits, through repeated and persistent fraud in violation of

New York Executive Law § 63(12).

## XXI.                    COUNT EIGHT
## REPEATED AND PERSISTENT ILLEGALITY IN VIOLATION OF
## NEW YORK EXECUTIVE LAW § 63(12)

121.  Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein.

122.   'PALMER' acting with Does' 1 through 5, engaged in repeated and/or

       persistent illegality in violation of New York Executive Law § 63(12) in the

       course of its, promotion, marketing, and/or advertising of extended vehicle

       warranty insurance in New York State.

123.   'PALMER' engaged in repeated and/or persistent illegality in violation of

       New York Executive Law § 63(12) through its violations pursuant to, *inter*

       *alia*: (i) General Business Law § 349; (ii) General Business Law § 350.

124.    'PALMER' damaged Plaintiff who is resident in New York State in order to

       aggrandize its ill-gotten profits, through repeated and persistent illegality in

       violation of New York Executive Law § 63(12).

## XXII.                          COUNT NINE
                            COMMON-LAW FRAUD

125.   Plaintiff re-alleges and incorporates the foregoing allegations as set

       forth herein.

126.   'PALMER' knowingly effectuated material misrepresentations and/or

       omissions of facts to Plaintiff, in order to induce Plaintiff to purchase

       'PALMERs' extended vehicle warranty insurance, as set forth in detail

       above.

127. 'PALMER' was aware when Plaintiff was solicited to tender payment to

purchase extended vehicle warranty insurance by obfuscating the truth about

its affiliation with Mercedes Benz of Atlantic City, New Jersey, on February

15, 2018. 'PALMER,' knowingly promulgated these misrepresentations

and/or false omissions, or alternatively reckless incantations thereby

disregarding the misrepresentations falsity.

128. 'PALMER' attempted to induce Plaintiff to tender payment for extended

vehicle warranty insurance, knowing he would rely on 'PALMERs'

misrepresentations and/or omissions.

129. Plaintiff did in fact reasonably rely upon 'PALMERs' misrepresentations

and/or omissions until he contacted Mercedes Benz of Atlantic City, New

Jersey to disavow 'PALMERs' claims.

130. Plaintiffs' reliance on 'PALMERs' misrepresentations and omissions of

material fact, caused Plaintiff to suffer direct and consequential injury.

131. 'PALMERs' fraudulent conduct was egregious, as directed towards Plaintiff

and involved a high degree of moral culpability.

**XXIII.**          **COUNT TEN**
                    **CONSPIRACY**

132.   Plaintiffs re-allege and incorporate the foregoing allegations as set

       forth herein.

133.   'PALMER' willfully agreed to conspire with its telemarketers to knowingly

       proffer material misrepresentations and/or omissions of fact, in order to

       induce, Plaintiff to purchase 'PALMERs' extended vehicle warranty

       insurance, as set forth in detail above.

134.   'PALMER' employed these tactics in an effort to aggrandize profits from

       increased insurance sales.

135.   'PALMER' promulgated false or misleading statements directly and through

       its telemarketers to further the objectives of the conspiracy.

136.   Plaintiff was directly and proximately harmed by the 'PALMER' conspiracy

       in an amount to be determined in this litigation.

### XXIV.          COUNT ELEVEN
### VIOLATION OF 15 U.S.C. §§ 52(a)

137.   Plaintiff re-alleges and incorporates the foregoing allegations as set

       forth herein.

138.   'PALMER' promulgated unfair or deceptive acts or practices. Dissemination

       of false and/or misleading advertisements within the provisions of

subsection (a) of this section shall be an unfair or deceptive act or practice in

or affecting commerce within the meaning of section 5, 15 USCS § 45.

139.   'PALMER' has no constitutional right to disseminate false advertisements by

United States mails or by any means in commerce for purpose of inducing or

which is likely to induce directly or indirectly purchase in commerce of

misleading advertised products. American Medicinal Products, Inc. v

Federal Trade Com. (1943, CA9) 136 F2d 426.

140.   It is not necessary that false advertising be directly disseminated by

'PALMER,' since 15 USCS § 52 makes it unlawful for 'PALMER' to cause

such false advertising to be disseminated. Shafe v Federal Trade Com.

(1958, CA6) 256 F2d 661.

141.   Advertising falls within proscription of Federal Trade Commission Act not

only when there is proof of actual deception but also when representations

made have capacity or tendency to deceive, that is, when there is likelihood

or fair probability that reader will be misled; it is therefore necessary in these

cases to consider advertisement in its entirety and not to engage in

disputatious dissection; ultimate impression upon mind of reader arises from

sum total of not only what is said but also of all that is reasonably implied;

advertising need not be literally false in order to fall within proscription of

Act. FTC v Sterling Drug, Inc. (1963, CA2 NY) 317 F2d 669.

142.  The fact that 'PALMER' effectuated its representations in good or bad faith

      is not determinative of whether such statements are deceptive and

      misleading; however, in order to be held participant in deception, advertising

      agency must know or have reason to know of falsity of advertising. Doherty,

      Clifford, Steers & Shenfield, Inc. v FTC (1968, CA6) 392 F2d 921, 1968

      CCH Trade Cases P 72397.

143.  Plaintiff is entitled to recover from 'PALMER,' all monies Plaintiff has spent

      and will have to spend in the future to address the effects of 'PALMERs'

      actions.

                    XXV.              COUNT TWELVE
                          VIOLATION OF 15 U.S.C. §§ 52(a)

144.  Plaintiff re-alleges and incorporates the foregoing allegations as set

      forth herein.

145.  'PALMER' knowingly and willingly promulgated marketing, promotion and

      advertising that was intended to induce Plaintiff into purchasing extended

      vehicle warranty insurance.  These deceptions violated the basic business

      principles that prevent unfair business competition and practices that

includes any 'unlawful, unfair or fraudulent' act or practice, as well as any

'unfair, deceptive, untrue or misleading' advertising.

146.   'PALMER' knowingly and willingly violated 15 U.S.C. § 45(a)(1) by

fraudulently representing false and misleading advertising statements to

mislead Plaintiff to believe, 'PALMERs' extended vehicle warranty

insurance was affiliated with Mercedes Benz, Atlantic City, New Jersey.

147.   The gravity of harm resulting from these unfair acts and practices

outweighed any conceivable reasons, justifications and/or motives for

'PALMER' to engage in such deceptive acts and practices. By committing

the acts and practices alleged herein, 'PALMER' proved that it has a

penchant to engage in unfair business practices within the meaning of 15

U.S.C. § 45(a)(1).

### XXVI.        COUNT THIRTEEN
### VIOLATION OF THE RACKETEER INFLUENCED
### CORRUPTION ACT (RICO) 18 U.S.C. § 1961 *et seq.,*

148.   Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein.

149.   Each officer, director, executive and manager associated with the 'PALMER'

scheme to defraud Plaintiff, including Does 1 through 5, through a pattern of

racketeering activities within the meaning of, 18 U.S.C. §§ 1961(1),1961(5),

and 1962(c) and used mail or wire facilities, is in violation of 18 U.S.C. §

1341 (mail fraud) and § 1343 (wire fraud).

150.  'PALMER' aided, abetted and committed what appears to be two predicate

acts of racketeering, 18 U.S.C. §§ 1341 and 1343.  'PALMER' effectuated

the same methods to induce Plaintiff to purchase its extended vehicle

warranty insurance at any cost.  As evidenced herein, a great deal of these

illegal activities were enacted in the United States.  Along with personal

meetings, the 'PALMER' Defendants hatched and promoted its fraudulent

scheme by using the phone, mail and internet to communicate its criminal

activities.

151.  'PALMER' intended to defraud Plaintiff by obtaining pecuniary

remuneration under materially false or fraudulent pretenses, false

representations, false promises thereby furthering an ongoing pattern of

concealment.  'PALMER' concealed these fraudulent activities hundreds of

times in the past when they willingly engaged in criminal racketeering

activities to further aggrandize profits at any cost.

152. These RICO predicated acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

(a) Mail Fraud: PALMER violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to advertise, manufacture and market car rental services by means of false pretenses, misrepresentations, promises, and omissions.

(b) Wire Fraud: PALMER violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

153. Plaintiff demands the court to impose treble damages at three times actual damages, along with equitable relief for costs associated with this litigation pursuant to 18 U.S.C. § 1964(c).

154. WHEREFORE, Plaintiff, respectfully implores' the Court to enter judgment for each count in his favor, to thereby provide the following relief:

(a) As too, 'COUNT ONE,' statutory damages of $500 per violation, or up to $1,500 per violation if

proven to be willful; and punitive damages as the Court see's just and proper;

(b)   As too, 'COUNT TWO,' a permanent injunction prohibiting Defendants, including but not limited to its employees, agents, representatives or other affiliates, to immediately CEASE & DESIST from effectuating any further telemarketing phone calls to Plaintiff which are in violation of the 'TCPA';

(c)   As too, 'COUNT THREE,' award the maximum penalty pursuant to the 'NEW JERSEY TRUTH IN CALLER ID ACT' which is TEN THOUSAND DOLLARS ($10,000) for each 'SPOOFED' caller ID received by Plaintiff; with additional 'TREBLE DAMAGES' imposed for willful violation of the statute.

(d)   As too, 'COUNT FOUR, ' award the maximum penalty pursuant to the 'NEW YORK TRUTH IN CALLER ID ACT ' which is, 'TEN THOUSAND DOLLARS' ($10,000) for each 'SPOOFED' caller ID received by Plaintiff; with additional,'TREBLE DAMAGES' imposed for willful violation of the statute.

(c)   As too, 'COUNT FIVE,' relief as the court sees' just and proper.

(d)    As too, 'COUNT SIX,' relief as the court sees' just

and proper.

(e)    As too, 'COUNT SEVEN,' relief as the court sees'

just and proper.

(f)    As too, 'COUNT EIGHT,' relief as the court sees'

just and proper.

(g)    As too, 'COUNT NINE,' relief as the court sees'

just and proper.

(h)    As too, 'COUNT TEN,' relief as the court sees'

just and proper

(i)    As too, 'COUNT ELEVEN,' relief as the court

sees' just and proper.

(j)    As too, 'COUNT TWELVE,' relief as the court

sees' just and proper.

(k)    As too, 'COUNT THIRTEEN,' relief as the court

sees' just and proper

(l)    Any other punitive damages as the Court finds just

and proper.

(m)   All other and further relief as the Court deems

necessary, just, and proper.

## XXVII.     <u>JURY DEMAND</u>

Plaintiff demands a trial by jury in conjunction with the Constitution, of

all claims set forth in front of this Court.


Signed this 5th day of June, 2019 at Great Neck, New York;


_____

Jay Brodsky, self represented, ProSe

**verizon** Billing period Feb 2, 2018 to Mar 1, 2018 | Account # 888737468-00001 | Invoice # 3696651740

# Jay Brodsky
973.568.1666 | iPhone 6S Plus

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|
| Feb 9 | 4:42 F | | | Neck, NY | 1 | | — | — |
| Feb 9 | 5:20 | | | | | | | |
| Feb 9 | 5:25 | | | | | | | |
| Feb 11 | 5:35 | | | | | | | |
| Feb 11 | 5:58 | | | | | | | |
| Feb 11 | 10:03 | | | | | | | |
| Feb 12 | 2:42 | | | | | | | |
| Feb 12 | 2:46 | | | | | | | |
| Feb 12 | 4:25 | | | | | | | |
| Feb 12 | 4:3 | | | | | | | |
| Feb 12 | 4:3 | | | | | | | |
| Feb 12 | 5:2 | | | | | | | |
| Feb 12 | 5:2 | | | | | | | |
| Feb 12 | 5: | | | | | | | |
| Feb 12 | 6: | | | | | | | |
| Feb 12 | 7: | | | | | | | |
| Feb 13 | 6 | | | | | | | |
| Feb 14 | 4 | | | | | | | |
| Feb 14 | 5 | | | | | | | |
| Feb 14 | 5 | | | | | | | |
| Feb 14 | | | | | | | | |
| Feb 14 | | | | | | | | |
| Feb 14 | | | | | | | | |
| Feb 15 | 2:24 PM | 973.369.9114 | Manhasset, NY | Incoming, CL | 5 | Palmer | | |
| Feb 15 | 3:24 PM | 973.568.6725 | Manhasset, NY | Incoming, CL | 3 | Palmer | | |
| Feb 15 | 5:05 PM | 609.645.9000 | Manhasset, NY | Pleasantvl, NJ | 6 | Mercedes Atlantic City, NJ | | |
| Feb 15 | | | | NY | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 16 | | | | | | | | |
| Feb 18 | | | | | | | | |
| Feb 18 | | | | | | | | |
| Feb 18 | | | | | | | | |
| Feb 19 | | | | | | | | |
| Feb 19 | | | | | | | | |
| Feb 19 | | | | | | | | |
| Feb 20 | | | | | | | | |
| Feb 20 | | | | | | | | |
| Feb 2 | | | | | | | | |
| Feb 2 | | | | | | | | |
| Feb 2 | | | | | | | | |

# Next Steps - FTC Complaint Assistant



FEDERAL TRADE COMMISSION

# Consumer Report to the FTC

FTC Report Number:

108010687

---

**The FTC cannot resolve individual complaints, but we can provide information about what next steps to take.** We share your report with local, state, federal, and foreign law enforcement partners. Your report might be used to investigate cases in a legal proceeding. Please read our Privacy Policy to learn how we protect your personal information, and when we share it outside the FTC.

## About You

**Name:** Jay Brodsky

**Address:** 240 East Shore Road

**City:** Great Neck   **State:** NY   **Zip:** 11023

**Country:** USA

**Email:** demcointerexport@yahoo.com

**Phone:** 973-568-1666

## What Happened

199 spoofed phone calls using an ATDS 2016-2018

## How It Started

**Date fraud began: Amount I was asked for: Amount I paid:**
1/21/2016          1300
**Payment Used:**                      **How I was contacted:**
                                       Phone Call: Mobile/Cell

## Who Is Your Complaint About

**Company/Individual 1**
**Name:** Palmer Administrative Services

**Address:** 3430 Sunset   **Apt/PO**
Ave                                   **Box:**
, **City:** Ocean   **State:** NJ   **Zip:** 07712
**Email Address:** info@palmeradministratve.com
**Phone:**
**Website:** palmeradministrative.com
**Representative:** Schaftel





Select Language | ▽

# Welcome to the Office of Attorney General Online Submission Form

## Consumer Frauds Bureau Online Complaint Form

### Form Successfully Submitted

Print

Thank you for filing your complaint with Bureau of Consumer Frauds and Protection. Your Intake Reference Number is #: 1-75687732. Please refer to your intake number when contacting the NYS Attorney General's Office regarding this complaint. Please click here to return to the Consumer Complaint resource center.

If you plan on mailing in supporting documents, please send them to the appropriate office listed on this page.

---

### Complaint Bureau

**Bureau Where You Filed Your Complaint**      Consumer Frauds Albany

---

### Your Information

| | |
|---|---|
| **Salutation** | |
| **First Name** | Jay |
| **Last Name** | Brodsky |
| **Business Name** | |
| **Street Address** | 240 East Shore Road |
| **Address Line 2** | Apt. 444 |
| **City/Town** | Great Neck |
| **State/Province** | New York |
| **County** | Nassau |
| **Zip/Postal Code** | 11023 |
| **Country** | UNITED STATES |
| **Email Address** | demcointerexport@yahoo.com |
| **Primary Phone Number** | 973-568-1666 |
| **Alternate Phone Number** | 973-568-3424 |
| **Gender** | Male |

---

### Subject of Your Complaint

| | |
|---|---|
| **Are you complaining about a person or a company?** | Company |
| **Business Name** | Palmer Administrative Services |
| **Street Address** | 3430 Sunset Ave. |
| **Address Line 2** | |
| **City/Town** | Ocean |
| **State/Province** | New Jersey |
| **Zip/Postal Code** | 07712 |
| **Email Address** | info@palmeradministrative.com |
| **Phone Number** | 800-599-9557 |
| **Website** | palmeradministrative.com |

## Additional Complaint Information

| | |
|---|---|
| **Location of Incident/Transaction** | Great Neck |
| **Date of Incident/Transaction** | 12/12/2018 |
| **Name of Product or Service** | extended vehicle warranty insurance |
| **Cost of Product or Service** | 1300 |
| **Method of Payment** | Other |
| **Other Payment Method Information** | no payment |
| **Complaint Description** | Palmer called using spoofed caller IDs 199 times over 3 years. An ATDS was used to call |
| **Did you sign a contract?** | No |
| **Was product or service advertised?** | |
| **Have you already complained to company/individual?** | Yes |
| **How?** | By Mail |
| **Complaint Date** | 12/1/2018 |
| **Person contacted** | Michael Schafften |
| **Job title** | Pres |
| **Nature of response** | none |
| **Date of response** | |
| **Has matter been submitted to another agency or attorney?** | Yes |
| **Name** | District Court New Jersey |
| **Address** | trenton new jersey |
| **Phone** | |
| **Email Address** | |

| | |
|---|---|
| **Is court action pending?** | Yes |
| **(Please describe as necessary)** | United States District Court New Jersey 47 USC 227 |
| **What form of relief are you seeking, e.g., refund, credit, exchange, repair?** | injunction, compensatory, punitive |
| **Manufacturer of Product** | |
| **Street Address** | |
| **City/Town** | |
| **State/Town** | |
| **Zip/Postal Code** | |
| **Product Model or Serial Number** | |
| **Warranty Expiration Date** | |
| **Did Business Arrange Financing?** | |

## In filing this complaint, I understand that:

☑ The Attorney General is not my private attorney, but represents the public in enforcing laws designed to protect the public from misleading or unlawful business practices. My filing this complaint does not mean that the Attorney General has initiated a lawsuit or proceeding on my behalf or that it will do so.

☑ The Attorney General cannot give me legal advice or represent me in court. If I have any questions concerning my legal rights or responsibilities, I should contact a private attorney.

☑ In order to resolve my complaint, the Attorney General may send a copy of my complaint and any documents I provide to the person or business about whom I am complaining and I authorize that person or business to release information concerning my complaint to the Attorney General.

☑ The Attorney General works with other state, local and federal government agencies to investigate complaints and coordinate law enforcement and may also share my complaint with them. In addition, the Attorney General may use information from my complaint in legal proceedings to establish violations of law.

☑ Any false statement made in this complaint are punishable as crimes, including under Section 175 and/or Section 210 of the Penal Law.

By typing my full name below, I certify that the above complaint is true and accurate to the best of my knowledge and that any documents attached are true and accurate copies of the originals.

| | |
|---|---|
| **Signature** | Jay Brodsky |
| **Date of Affirmation** | 06/06/2019 |